CASE 11—ACTION BY THE LOUISVILLE BANKING COMPANY AGAINST THE UNION NATIONAL BANK OF LOUISVILLE AND OTHERS, PRAYING THE DEFENDANTS BE REQUIRED TO INTERPLEAD FOR THE PURPOSE OF DETERMINING THE RIGHT TO A FUND HELD BY PLAINTIFF, AND ENFORCE A BANKER'S LIEN ON SAID FUND—OCT. 29.

# Louisville Banking Co. v. Asher, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR T. J. ASHER, ASSIGNEE OF THE PINEVILLE BANKING COMPANY AGAINST PLAINTIFF, AND PLAINTIFF APPEALS. REVERSED.

ACCOUNT STATED—MISTAKE OF LAW—NOTE NOT ON FOOTING OF BILL OF EXCHANGE—FAILURE TO PROTEST—LIABILITY OF BANK AS ENDORSER.

Held: 1. Where one of two banks who were correspondents for each other sent to the other numerous statements of their account as it appeared on its books, and the statements were acknowledged to be correct, there was an account stated.

2. Where an account stated by one bank against another embraced a charge of the amount of a note for which both parties, under a mistake of law, erroneously supposed the debtor bank to

Louisville Banking Company v. Asher, &c.

be liable because.it had failed to protest the note, equity will grant relief as in the case of money paid under a mistake of law; the creditor bank not having altered its position after the debtor's acknowledgment of the correctness of the account.

3. Under Kentucky Statutes, section 483, promissory notes discount-ed by a bank in another State were not placed on the footing of bills of exchange, and the indorser was not released by the failure to protest them.

4. Where a bank failed to demand payment, or to protest for non-payment a note sent to it for collection on which it was liable as indorser, and which had been placed on the footing of a bill of exchange, it became liable to the holder.

5. In a settlement of accounts between the L. bank and the P. bank, which had been correspondents for each other, it was error to take as a basis the balance shown by the books of the P. bank, as the L. bank had no notice of the account as it was kept on those books, and the entries were not shown to have been made at the time of the transactions, or in the reg-ular course of business; but as the account as kept on the books of the L. bank had been submitted at the end of every month to the P. bank, and had been acknowledged by it to be correct, thus becoming an account stated, the balance as shown by that account should be taken as the basis of settlements. subject to proper corrections.

SHACKELFORD MILLER, FOR APPELLANT.

BARNETT & BARNETT, OF COUNSEL.

## POINTS AND AUTHORITIES.

The Louisville Banking Co. and the Pineville Banking Co. had been correspondents for each other in their respective towns for many years. The Pineville Banking Co. assigned on July 28, 1893, the news reaching the Louisville Banking Co. after the close of that day's business. At the beginning of busi-ness on July 28, 1893, the Pineville Banking Co. had $1,370.42 to its credit in the Louisville Banking Co. At the close of business on that day it had $354.02 to its credit. By subse-quent collections of outstanding paper, this balance had grown to $1,427.25, when this suit was begun on October 12, 1893, if the $1,000.00 Foerster draft be credited to the Pineville Banking Co., but to only $427.25 if that $1,000.00 be given to Foerster or to Woodward. To this balance the lower court added the Runyon notes for $2,168.28, with seven years' interest, and refused to allow the Louisville Banking Co any interest upon

its $1,200.00 note against the Pineville Banking Co., making a total of $5,657.36, for which appellee was given judgment.

## A. THE RUNYON-BARRY NOTES.

The five Runyon notes, aggregating $2,168.28, were all dated February 28, 1890, and were all payable to Barry's order six months after date at the Pineville Banking Co. In August 19, 1890, the Louisville Banking Co. sent these notes to the Pineville Banking Co. for collection and protest if not paid. The Pineville Banking Co. failed to collect the notes or to protest them.

On November 20, 1890, the Louisville Banking Co. paid this sum of $2,168.28 to the Cincinnati bank from which it had received them for collection, and in turn charged that sum against the Pineville Banking Co. and sent the notes with an itemized account, showing the specific charge, to the Pineville Banking Co. That bank kept the notes, and acknowledged in writing that the account was correct, and continued to re-acknowledge the correctness of the account every month for more than three years, and never referred to the notes or requested payment therefor. More than three years thereafter the assignee asserted the claim here, and the lower court gave him judgment therefor.

A. 1. The charging of these Runyon notes against the Pineville Banking Co., on November 20, 1890, and the acquiescence of the bank in charge for three years, aside from the admission by the Pineville Banking Co., admitting at least twenty-six times in writing that the balance to its credit was correct, without a single denial of its correctness, constituted in law and was in fact a settlement and an account stated between the two banks.

Bouvier's Law Dictionary, Verb, "Settlement;" "Account Stated;" Union Bank v. Planters' Bank, 9 Gill & J., 439; 31 Am. Dec., 113; Burton v. Burley, 9 Biss., 253; 3 Myers Fed. Dec., 265; First Nat'l Bank of Evansville v. Fourth Nat. Bank of Louisville, 6 C. C. A., 183; 56 Fed., 967; Henderson Cotton Mfg. Co. v. Lowell Machine Shops, 86 Ky., 672; Porter v. Price, 26 C. C. A., 72; 80 Fed., 655; Allen-West Commission Co. v. Patilo, 33 C. C. A., 194; 90 Fed., 628; Charlotte Oil & Fertilizer Co. v. Hartog, 29 C. C. A., 61; 85 Fed., 150; Long-Bell Lumber Co. v. Stump, 30 C. C. A., 265; 86 Fed., 574; Sayward v. Dexter, 19 C. C. A., 176; 72 Fed., 758; Harley v. 11th Ward Bank, 7 Daly, 476; (76 N. Y., 618 on appeal); Baker v. Biddle, 1 Baldw., 418; 15 Myers Fed. Dec., 354; Bainbridge v. Wilcock, 1 Baldw., 539; Lockwood v. Thorne, 11 N. Y., 170; 62

Louisville Banking Company v. Asher, &c.

Am. Dec., 81; Lockwood v. Thorne, 18 N. Y., 286; Durham v. Griswold, 100 N. Y., 224; Manchester Paper Co. v. Moore, 104 N. Y., 680; Knickerbocker v. Gould, 115 N. Y., 533; Bruen v. Hone, 2 Barb.; 586; Valkenning v. DeGraaf, 81 N. Y., 271; Clare v. Clare, 10 Neb., 54; McKinster v. Hitchcock, 19 Neb., 100; Ware v. Manning, 86 Ala., 238; McDeelan v. Crofton, 6 Ma., 308; McCall v. Nave, 52 Miss., 494; Sargeant v. Ewing, 36 Pa., 156; Murray v. Toland, 3 Johns., Chy., 569; Bullock v. Boyd, 2 Edw. Chy., 293; Bussey v. Gant, 10 Humph., 238; Heidenheimer v. Ellis, 67 Tex., 426; Greene v. Harris, 11 R. I., 5; Wittkowski v. Harris, 64 Fed. Rep., 712; Freeland v. Heron, 7 Cranch., 147; Toland v. Sprague, 12 Pet., 334; Wiggins v. Burkham, 10 Wall., 129; Standard Oil Co. v. Van Etten, 107 U. S., 329; Richmond Mfg. Co. v. Starks, 4 Mason, 297; Hopkirk v. Page, 2 Brock, 20; McCormack v. Sawyer, 104 Mo., Mo., 36; Brown v. Vandyke, 8 N. J., 795; 55 Am. Dec., 250; Freas v. Truitt, 2 Colo., 489; Baxter v. Lockett, 6 Pac., (Wash.) 431; Note to Wiggins v. Burkham, 10 Wall., 129; Lawyers' Co. Op., Ed., Book 19, p. 884; 62 Am. Dec., 81; note to Lockwood v. Thorne; 27 Lawyers' Reports Annotated, 811; note to Vanbebber v. Plunkett; 1 English Ruling Cases, 431; American Notes to Laycock v. Pickles; 1 Am. & Eng., Ency. of Law (2d Ed., p. 448, *et seq.*

A. 3. A stated account can be impeached only for fraud, accident, mistake, omission or undue influence. 1 Am. & Eng. Ency. of Law (2d Ed.), 460; 1 Ency. of Pl. & Pr., 107; Note to Lockwood v. Thorne, 62 Am. Dec., 91; Charlotte O. & F. Co. v. Hartog, 29 C. C. A., 61; 85 Fed., 150; Durham v. Griswold, 100 N. Y., 226; Atkinson v. Allen, 17 C. C. A., 572; 71 Fed., 58; Chappedelaine v. Dechenaux, 4 Cr., 309 (Chief Justice Marshall); Pottinger v. Cameron, Litt. Sel. Cas., 115; Hager v. Hart, 1 Black, 80; Perkins v. Hart, 11 Wheat, 237, and the note thereto in Lawyers' Co-Op. Edition, Book 6, p. 463.

A. 4. There is neither allegation nor proof of any of these grounds. Both allegation and proof must exist and conform to each other before relief will be granted. Phelps v. Elliott, 35 Fed. Rep., 461; Harrison v. Nixon, 9 Pet., 483; Foster v. Goddard, 1 Black, 518; Boone v. Chiles, 10 Pet., 117; Carneal v. Banks, 10 Wheat, 161; Murrell's Admr. v. McAllister, 79 Ky., 315; Robinson v. Morgan, Litt. Sel. Cas., 57; Carroll v. Collins, 2 Bibb, 429; Erwin v. Devine, 1 J. J. M., 240; Cochran v. Tatum, 1 J. J. M., 394; Henderson v. Richards, 1 J. J. M., 490; Barbour v. Pate, 2 T. B. M., 7; Burgess v. Gresham, 5 Dana, 540; Kearney v. Covington, 1 Met., 339; Gossom v.

Badgett, 6 Bush, 97; 4 Minor's Inst., 578; Newman Pl.' & Pr., 738. Daniell's Chy. Pr.

A. 5. The appellant's case is stronger than a case of an account stated. By keeping the notes; by monthly written statements for three years, saying the charge against it was correct, the Pineville Banking Co. is estopped from now saying it is wrong. Pomeroy's Jur., Sec. 802, 806, 807, 812, 813; Stephen's Evidence, Art., 162; Story's Eq. Jur., Chap 44; Lyne v. Bank of Ky., 5 J. J. M., 564; Smith v. Schneck, 9 B. M., 407; Irvine v. Scott, 85 Ky., 264; City of Louisville v. Harlan, 97 Ky., 286; Phelps v. Plum, 17 Ky. Law Rep., 817; Green v. Taylor, 98 Ky., 333; Baxter v. Lockett, 6 Pac. R. Wash., 431-2.

A. 6. Asher, as assignee, takes only such rights as the Pineville Banking Co. had. If the Pineville Banking Co. could not maintain its claim, Asher, as its assignee, can not maintain it. Dietz v. Sutcliffe,' 80 Ky., 650; Bank of Commerce v. Payne, 86 Ky., 446; Longdale Iron Co. v. Swift's Iron & Slate Works, 91 Ky., 191; Bowles v. Bowles, 80 Ky., 529; Wright v. McAplin, 18 Ky. Law Rep., 226; German Ins. Bank v. Jackson, 10 Ky. Law Rep., 1061; Walker v. Walker's Assignee, 19 Ky. Law Rep., 629, and 21 Ky. Law Rep., 1522, on second appeal; Milton Wagon Works v. Edwards, 7 Ky. Law Rep., 835; Tandy v. Robbins, 8 Ky. Law Rep., 265; Crozier v. Cromie, 14 Ky. Law Rep., 858; Bowles v. Bowles, 80 Ky., 529;.

B. THE HULL, WYMAN & CAIRNS NOTE FOR $2,500.00.

On March 30, 1893, Hull, Wyman & Cairns executed their negotiable note to the Pineville Banking Co. for $2,500.00, payable four months thereafter. On April 28, 1893, the Louisville Banking Co. discounted it for the owner, the Pineville Banking Co., and paid it the proceeds. The note was executed at Pineville, and payable at the Pineville Banking Co. On July 25, 1893, the Louisville Banking Co. sent the note to the Pineville Banking Co. for collection. It neither collected the note, presented it for payment, nor protested it for dishonor, but kept it; whereupon the Louisville Banking Co. charged it against the Pineville Banking Co., as its immediate endorser.

B. 1. By endorsing this note to the Louisville Banking Co., the Pineville Banking Co. became liable to the Louisville Banking Co., as endorser, upon the failure of the makers to pay the note at maturity. 2 Kent Com., star page, 104; Risk v. Bridgeford, 15 Ky. Law Rep., 206; Am. & Eng. Ency. of Law, 2d Ed., p. 482; Daniel on Neg. Inst., Vol 2, Sec. 1303; 2 Parson's Bills & Notes, 23; Ross v. Jones, 22 Wall., 576; McDonald v.

McGruder, 3 Pet., 470; Hixon v. Reed, 2 Litt., 176; Poignard v. Vernon, 1 T. B. M., 47; Smith v. Bacon, 33 J. J. M., 313;; Bowman v. Wright, 7 Bush, 377; Lyddane v. Owensboro Banking Co., 21 Ky. Law Rep., 320; Callahan v. Bank of Ky., 82 Ky., 235.

B. 2.   Besides being liable as endorser, the Pineville Banking Co. was the collecting bank, liable for neglect:   (1)   In not presenting this $2,500.00 note for payment; (2) in not causing it to be protested for non-payment; and (3) in not giving appellant notice thereof.   Story on Bills of Exchange, Sec. 382; Mechem on Agency, Sec. 514; Ayrault v. Pacific Bank, 47 N. Y., 570; 7 Am. Rep., 489; Nat. Bank of Commerce v. Mer. Nat. Bank, 91 U. S., 92; Fabens v. Mer. Bank, 23 Pick., 330; Heckman v. Ryan, 5 Litt., 24; Sanderson v. Sanderson, 20 Fla., 292; Western Wheeled Scraper Co. v. Sadilek, 50 Neb., 110; 61 Am. St. Rep., 552.

Having possession of the note, the Pineville Banking Co. could have had it protested, or could have waived protest as endorser.   It will be presumed that it waived the protest. Hayes v. Citizens' Savings Bank, 101 Ky., 201.

B. 3.   The ruling of the trial court upon this $2,500.00 item was never excepted to by appellee in any way.   The correctness of that ruling is not raised in this record.

(a) An exception is necessary, and it must be specific.   Rule XIII., Jefferson Circuit Court; Kentucky Statutes, sec. 980; 2 Dan. Chy. Pl. & Pryor. (16th Am. Ed.), star page 1309, 1319, and 1289, note; 4 Minor's Inst., 1248; Elliott on Appellate Procedure, 95; 17 Ency. of Pl. & Pr., 1052; Harding v. Handy, 11 Wheat, 103; Story v. Livingston, 13 Pet., 359; White v. Hampton, 10 Iowa, 238; Dexter v. Arnold, 2 Sumn., 108; Holcomb v. Holcomb, 11 N. J. Eq., 292; O'Reilly v. Brady, 28 Ala., 530; Smalley v. Corliss, 37 Vt., 486; Ridley v. Ridley, 1 Colo., 323; Goddard v. Cox, 1 Lea., 112; Stanton v. R. R., 2 Woods, 506; Sheffield & B. I. & C. Co. v. Gordon, 151 U. S., 285; Greene v. Bishop, 1 Cliff, 186; Chandler v. Pomeroy, 87 Fed. Rep., 262; Potter v. Wilson's Admr., 13 Ky. Law Rep., 783.

(b) Having specifically designated his objections to costs and fees, appellee will be confined to those items.   Burgher v. Burgher, 12 Ky. · Law Rep., 95 Commonwealth v. Burnett, 19 Ib., 1838; Bland v. Gaither, 10 Ib., 1035.

(c) Appellee did not except to the Commissioner's report, or to the ruling of the court thereon, as to this $2,500.00 item. There must be an exception taken to the ruling of the trial court in order to review it here.   Green v. Culver, 19 Ky. Law Rep., 186; Pittsburg coal Co. v. Withers, 19 Ky. Law Rep., 113; Castle v. Bays, 19 Ib., 345; L. & N. R. R. Co. v. Henry, 19

Ib., 1783; Commonwealth v. Burnett, 19 Ib., 1837; Bronson v. Commonwealth, 92 Ky., 333; McCarty v. McCarty, 11 Ib., 366; Lucas v. Brand, 22 Ib., 625.

C. ITEMS SUBSEQUENT TO THE ASSIGNMENT OF THE PINEVILLE BANKING CO., ON JULY 28, 1893.

These items are very few and relate almost entirely to the balance due on July 28, 1893, and subsequent interest charges and costs of the action. Marriman's testimony was improperly taken as the basis of the balance, because he shows the books of the Pineville Banking Co. are incorrect, were carelessly kept, and that he had to arbitrarily correct them.

C. 1. Marriman's testimony as to the contents of the books of the Pineville Banking Co. is incompetent, because he never kept them or made an entry therein, and no attempt has been made either to show who made the entries, or that the person who made them was dead, or beyond the process of the court. Lane v. Lockridge, 20 Ky. Law Rep., 1103.

C. 2. The balance of $4,428.83, shown by the report to be due the Pineville Banking Co. on July 28, 1893, is incorrect upon any basis. The true balance was $1,370.42, as shown by the books of the Louisville Banking Co., and sworn to by Harris and Charlton. But if the Runyon notes, $2,168.28, be added, as the lower court held, the balance would then have been only $3,538.70, or $890.13 less than the sum actually allowed.

C. 3. If the Runyon notes and the Hull note be excluded, the correctness of the balance of $1,370.40 on July 28, 1893, as shown by the books of the Louisville Banking Co., is admitted and adopted by Asher in his answer and counterclaim.

C. 4. When the account is correctly stated, the Louisville Banking Co. did not have sufficient funds on hand to pay either the $1,200.00 note or the $2,500.00 note when they fell due, and interest should not have been charged upon a balance which did not in fact exist.

C. 5. The balance was against the Pineville Banking Co. until May 23, 1899, when the Bell county bonds were sold, and no interest should have been charged against the Louisville Banking Co. prior to that time, and after that time only upon the balance due.

C. 6. In equitable actions the chancellor has a large discretion in apportioning the costs beteen the contending parties, so as to render complete justice. The costs and fees of prosecuting this suit were properly divided equally between the two banks. Dan. Ch. Pl. & Pr., 1462 Mitford's & Tyler's Equity Pl. & Pr., 493; Pomeroy's Eq. Jur.; Clay v. Hopkins, 2 A. K. M., 488;

Kaye v. Bank of Louisville, 9 Dana, 264; Emerson v. Wood, 7 Ky. Law Rep., 364; Henderson v. Nesbitt, 20 Ib., 1666; 17 C. C. A., Note on page 370; Foster v. Elk. Fork Oil & Gas Co., 40 C. C. A., 21; 99 Fed., 617; Farley v. Blood, 30 N. H., 354; Manchester P. W. v. Stevenson, 2 R. I., 415; Atkinson v. Manks, 1 Cow., 691; Canfield v. Morgan, Hopk. Ch., 224; Aymr v. Gault, 2 Paige, h., 284; Badeau v. Rogers 2 Paige, Ch., 209; Spring v. S. C. Ins. Co., 8 Wheat., 268.

C. 7. A large part of these costs and expenses were incurred by the check-holders of the defunct Pineville Banking Co. in trying to establish their claims against the Pineville Banking Co.'s fund in appellant's hands. Appellant is in no way interested in that question, and those costs and expenses are wholly chargeable against the Pineville Banking Co. or its fund. In the absence of proof, the finding of the commissioner and the trial court fixing this proportion at one half, will not be disturbed. Ency. Pl. & Pr., vol. 2, p. 402; 3 Barbour's Digest, p. 217 (cases collected); Davidson v. Morrison, 86 Ky., 397; Huss v. Rice, 92 Ky., 365; Davezac v. Seiler, 93 Ky. 418; Morris v. Jeter, 4 Ky. Law Rep., 638; Gifford v. Mullins, 9 Ib., 714; McMurtry v. Vowells, 10 Ib., 495; Deshaser v. Deshaser, 11 Ib., 159; Houchin v. Houchin, 11 Ib., 455; Frances v. Ramsey, 16 Ib., 870; Holdman v. Bell, 17 Ky. Law Rep., 104; Adwell v. Bannon, 17 Ib., 696; Turner v. Bannon, 17 Ib., 1290; Rouse v. Neole, 18 Ib., 33; Sutt v. Hough, 18 Ib., 72; Walker v. Yellow Pine Lumber Co., 18 Ib., 76; Russell v. Martin, 18 Ib., 125; Bannon v. Hawkins, 18 Ib., 150; Caldwell v. South, 19 Ib., 453; Beeler v. Stewart, 19 Ib., 473; Gobin v. Shields, 19 Ib., 961; City of Louisville v. Gosnell, 20 Ib., 539; Wooley v. Greenwade, 20 Ib., 624; Plank v. Keith, 21 Ib., 1837; Winter v. Howell's Assignee, 22 Ib., 699; Trimble v. Spicer, 22 Ib., 711; Burkhart v. Hicks, 22 Ib., 733; Maine's "Village Communities & Miscellanies" p. 318.

D.

None of the matters complained of by appellees below can be considered or reviewed because appellee has taken no cross-appeal, and has no appeal here.

D. 1. There is no cross-appeal here, and if there, it could only review costs and fees, which were reserved below by an exception. Brown v. Van Cleave, 86 Ky., 386.

D. 2. There is no appeal here by appellee. (P. 94.)

The only questions which appellee reserved below by exceptions were cost and fees, and they can only be reviewed, (1) by a cross-appeal, or (2) by prosecuting the appeal granted by the

trial court, which can only be done by paying the tax and making the statement of appeal upon the record as required by section 739 of the Code. Neither method has been attempted. Mitchell v. Kinnaird, 17 Ky. Law Rep., 1252; Murphy v. Blandford, 11 Ky. Law Rep., 125; Mudd v. Mullican, 11 Ky. Law Rep., 419; Tarvin's Assignee v. Tarvin's Creditors, 20 Ib., 730; Board of Councilmen of Frankfort v. Farmers' Bank of Ky., decided March 14, 1901 (not yet reported); Boske v. F. T. & S. V. Co., 22 Ib., 182.

## CHRONOLOGY OF THE CASE.

1890, Aug. 19. Louisville Banking Co. sent Runyon-Barry notes ($2,168.28 to Pineville Banking Co. for collection.

" Sept. 12. Barry notes returned by the Pineville Banking Co to Louisville Banking Co.

" Nov. 20. Louisville Banking Co charged Barry notes to Pineville Banking Co. and sent the notes to that bank (it kept them and has them now.)

1893, March 30. Hull, Wyman & Cairns executed their $2,500.00 note, due in four months, which the Pineville Banking Co. discounted.

" April 28. The Louisville Banking Co. rediscounted this $2,500 note for the Pineville aBnkinCg Co. and paid it the proceeds.

" July 18. Pineville Banking Co. borrowed $1,200.00 from Louisville Banking Co., evidenced by its twenty-day note, secured by two Bell County Bridge Bonds.

" July 25. Louisville Banking Co. sent the Wyman & Cairns $2,500 note to Pineville Banking Co. (its indorser) for collection.

" July 28. Pineville Banking Co. assigned to Asher.

" July 28. The $1,200.00 note matured (no grace, 21 Ky. Law Rep., 756).

" Aug. 2. Hull, Wyman & Cairns $2,500.00 matured (with grace).

" Aug. 2. Foerster-Woodward $1,000.00 draft collected and credited to Pineville Banking Co.

" Oct. 12. This suit brought for a settlement, showing balance $1,437.25 (which included Foerster-Woodward $1,000.00 draft).

" Dec. 15. Asher, assignee, filed his answer and counter-claim.

" Dec. 15. Asher enjoined the sale of the Bell county bonds and the collection of the $1,200.00 note, due since July 28th.

1899, May 23.  Bell county bonds sold for $2,729.32.

"    June 24.  Foerster recovered judgment herein against the Louisville Banking Co. for the $1,000.00 Woodward draft and six years' interest (embraced in the balance of $1,437.25 due Pineville Banking Co., and shown by the petition filed Oct. 12, 1893; correct balance now only $437.25 as of the filing of the petition).

1900, July 12, Asher, assignee, recovered judgment against Louisville aBnking Co. for $5,657.36, with interest from Aug. 16, 1899.

1901, March.  Foerster's judgment satisfied by Louisville Banking Co., leaving true balance at filing of petition $437.25, instead of $1,437.25, as there shown.

BURWELL K. MARSHALL, FOR APPELLEE, PINEVILLE BANKING COMPANY'S ASSIGNEE.

## POINTS AND AUTHORITIES.

To hold assignor liable on assignment, due diligence must be used and suit and *nulla bona* obtained.    Kentucky Statutes, sec. 474, note 11, page 309; Francis v. Gant, 80 Ky., page 190; Citizens' Nat. Bank v. Hubbert, 97 Ky., 768.

Promissory notes to be placed on footing of foreign bills of exchange must be made payable to a person or corporation, and payable and negotiable at a bank in this State incorporated under the State law or organized in the State under U. S. law, and which shall be endorsed to and discounted by some bank so organized in the State of Kentucky.  Kentucky Statutes, sec. 483; Carlisle v. Chambers, 4 Bush, 268; Campbell v. Farmers' Bank, 10 Bush, 152; Paine v. Bank, 10 Bush, 176; Weight. given chancellor's judgment; Asper v. Edwards, 22 Ky. Law Rep., p. 838.

To estop a party his claim must be clear, specific and distinct, and the one seeking to rely on an estoppel must have been misled into acting or changed his position by the act of the party whom he is seeking to estop.

This is elementary law, and in Bigelow on Estoppel, Ed. 1872, page 480, the author shows that there must be all of the following elements in every case in order to create an estoppel, to-wit:

1. There must have been a representation or a concealment of material facts.

2. The representation must have been made with knowledge of the facts.

3. The party to whom it was made must have been ignorant of the truth of the matter.

4. It must have been made with the intention that the other party should act upon it.

5. The other party must have been induced to act upon it.

The requirement of these elements is stated, and the component parts of each in detail is referred to in the text and all the cases cited in the notes in 11 Am. and Eng Ency. of Law, 2 ed., pages 421 to 436 inclusive.

Now, applying these elements to the case at bar, and it is shown conclusively that appellee is not estopped, for there was no misrepresentation or concealment by the Pineville Banking Company. Appellant was not ignorant of the truth of the situation, and there was no intention on the part of the Pineville Banking Company that the Louisville Banking Company should pay the Ohio bank the Runyan-Barry notes and charge them to the Pineville Banking Company, and, as we said in our brief, that the appellant was never induced to pay the Ohio bank the Runyan-Barry notes by any act of the Pineville Banking Company.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The Louisville Banking Company and the Pineville Banking Company were correspondents for each other. The Pineville Banking Company made an assignment on July 28, 1893, to appellee, T. J. Asher, for the benefit of all its creditors, being then hopelessly insolvent. As shown by the books of the Louisville Banking Company, the Pineville Banking Company had then to its credit with it $1,370.42. As shown by the books of the Pineville Banking Company, this balance was $4,928.83. But this omitted a credit of $500 which should have been entered, so that, as shown by these books as corrected, the balance was $4,428.83. This litigation involves a settlement of these accounts. On February 28, 1890, five notes were executed by different persons to P. Barry, due six months after date, negotiable and payable at the Pineville Banking Company, aggregating in all $2,168.28. Barry discounted these notes to the Citizens' National Bank of Cincinnati, and on August 15, 1890, that bank sent them to the Louisville Banking Com-

pany for collection, marked "Protestable." On August 19th the Louisville Banking Company sent them to the Pineville Baking Company, its correspondent, at which they were payable. The notes matured ten days later, and were neither collected nor protested for nonpayment by the Pineville Banking Company, but were sent back by it to the Louisville Company without explanation. It returned them to the Cincinnati bank. The Cincinnati bank sent them back to the Louisville Banking Company, demanding the money on them upon the ground that it was responsible for the negligence of its correspondent, the Pineville Banking Company, in not protesting the notes. The Louisville Banking Company then wrote the Pineville Banking Company, returning the notes to it, and demanded that it should pay the money. The Pineville bank claimed that the notes were sent to it marked "No protest," and again returned them to the Louisville Banking Company. This was on September 11th. On September 12th it wrote the Pineville bank this: "Yours of 11th returning notes received. In order that we may fit the responsibility upon the right one in this office, will you kindly return for our inspection our instructions not to protest the notes? Our letter book shows that they were sent protestable." On the 13th the Pineville bank replied that it had not preserved the letter, and was sorry it could not produce it. Some other correspondence ensued, and on October 6th the Pineville bank wrote, in answer to a letter received by it in regard to the matter, stating that it would have its Mr. Fish call and see the Louisville Banking Company during the week. On the 8th that bank replied thus: "Our Cincinnati correspondent from whom we received the items is whooping us up pretty lively. There is nothing left for us to do but to credit their account with proceeds of their collections,

and, while we regret it sincerely, we shall be compelled to look to you in like manner." In answer to this letter on October 10th the Pineville Bank again wrote that Mr. Fish would call and investigate the matter, and, after stating that Fish, who attended to the notes, understood they were sent without protest, added: "We certainly don't want you to have any trouble about these items, and will surely see that they are properly adjusted at once." On October 20th the Louisville bank wrote again, inclosing a letter from the Cincinnati bank insisting that the matter be adjusted, and repeated this again in a letter of October 24th. No further correspondence appears in the record until November 20, 1890, when the Louisville bank wrote as follows: "Enclosed herewith you will find the five notes which have been charged to your account, as the cashier wrote you yesterday. We regret the circumstances that force us to do this, but can not help it." On the same day the Louisville Banking Company charged the amount of the notes to the account of the Pineville Banking Company, and credited the Cincinnati bank by the amount, and it was checked out by that bank. The Louisville Banking Company at the end of the month of November sent the Pineville bank a statement of its account, and received from it this in substance: "Your statement of account for November, 1890, is correct." This statement showed the charge of the $2,168.28. Similar statements and acknowledgments were made at the close of each month from that time until the Pineville bank failed, on June 28, 1893. But the Pineville Banking Company did not credit the Louisvile Banking Company on its books with the amount. The Louisville Banking Company did not know this, and seems to have acted on the idea that the matter was settled until this controversy arose. The evidence shows that the

notes were sent to the Pineville Banking Company marked for protest, and we think the circumstances warrant the conclusion that the Pineville bank realized that a mistake had been made by its man in not protesting the notes.

It is earnestly insisted for appellant that after the numerous statements sent, and acknowledged to be correct, the account was stated, and the balance shown by the statements is conclusive between the parties. We think, under the evidence, it should be regarded as an account stated. Henderson Cotton Mfg. Co. v. Lowell Machine Shops, 86 Ky., 668 (9 R., 831), 7 S. W., 142; Union Bank v. Planter's Bank, 31 Am. Dec., 113. The rule as to an account stated is thus well put in 3 Enc. Law & Proc., pp. 451, 455. "Formerly the stating of an account was considered so deliberate an act as to preclude an examination into the items, but since an early day a greater latitude has prevailed; and it may now be said to be the rule that an account stated does not create an estoppel, and that neither a stated nor a settled account is conclusive, but simply affords strong presumptive evidence, which may be rebutted by showing fraud or mistake. And, while the practice of opening accounts which the parties have themselves adjusted is considered dangerous, yet a settlement must be so far considered as made upon absolute mistake or imposition, if palpable errors are shown, as not to be obligatory upon the injured party. The presumption is one relating to the evidence. In determining whether an account stated can be impeached, the case is put upon the same footing as if the money had been paid. Such payment would be conclusive, subject to the right to recover it back on a failure of consideration; and so, on the statement of an account, if the case is one in which a payment, if made, could have been re-

covered back, the facts which show the failure of consider-ation may be proved."

In the correspondence between the two banks it seems to have been assumed that the indorser of the notes had been released by the failure to protest them, and that the Pineville bank was responsible for the loss if the notes were sent to it by the Louisville bank with instructions to protest them if not paid. But promissory notes are only put on the footing of foreign bills of exchange when they are regularly discounted by the bank at which they are payable, or another bank in this State incorporated under its laws, or organized in this State under the laws of the United States. Kentucky Statutes, sec. 483; Carlisle v. Chambers, 67 Ky., 268, 96 Am. Dec., 304. The notes in question, having been discounted by the bank in Cincinnati, Ohio, and not by any bank in this State, were not, there-fore, placed on the footing of a bill of exchange, but stood as any other promissory note which had been assigned. The indorser was not released by the failure to protest them. The Cincinnati bank had not sustained any loss by reason of the failure to protest them. The protest would have been only an unnecessary expense. There was no liability of the Louisville bank to the Cincinnati bank, or of the Pineville bank to the Louisville bank, for the failure to protest the notes, which were executed in this State, were payable here, and must be governed by its laws.

It is clear from the evidence that the parties to the notes were all insolvent at the time, and that the notes were in fact worthless. The question then arises, is there such a palpable mistake here that equity should relieve against it, treating the account as stated, and applying the princi-ples followed in this State in the case of a payment of money by mistake? The distinction made in some jurisdic-

tions between a mistake of law and a mistake of fact has been rejected in this State, and it is settled that money paid without consideration under a palpable mistake of law or fact, which was not owing in law or conscience, and ought not to be retained, may be recovered back. McMurtry v. Railroad Co., 84 Ky., 462 (8 R., 455), 1 S. W., 815, and cases cited. The mistake here is palpable, and · the charge against the Pine- ville bank can not be allowed to stand unless it has lost its rights by laches, and is now estopped to assert them. It does not appear from the evidence that the Pineville bank led the Louisville Banking Company to take the ac- tion it took. On the contrary, the correspondence would indicate that the Louisville bank charged the amount to the Pineville bank, and credited it to the Cincinnati bank on the same day, expressing to the Pineville bank regret that it was compelled to do so. In other words, it acted on its own judgment, and not by the direction of the Pine- ville bank. It did not wait for the Pineville bank to affirm its action before crediting the Cincinnati bank by the money or paying its checks upon it, and it does not appear that it was misled by the Pineville bank, or is now in a worse position than it would have been if the Pineville bank had promptly disaffirmed what it did. Nor does it appear that it will be unable now to get its money back from the Cincinnati bank. We are therefore of opinion that ap- pellee was properly credited in the settlement of the ac- count with the amount of these notes.

The next matter in dispute arises in this way: The Pine- ville bank held a four-months note, dated March 30, 1893, on Wyman & Cairns. The Louisville Banking Company discounted the note on April 28, 1893. It was payable at the Pineville Banking Company. On July 25, 1893, the Louisville Banking Company sent the note to the Pineville

Banking Company for collection. It was not paid at maturity. The Pineville Banking Company failed to demand payment, or to protest it for nonpayment. The Pineville bank was liable on this note as indorser, and, having failed to demand payment or protest, it became liable to the Louisville bank for the amount, and the court below properly so held.

The next matter to be considered is the proper basis for the settlement of the accounts. The commissioner adopted as his basis the balance shown by the books of the Pineville Banking Company. This was error. The Louisville bank had no notice of the account as it was kept on these books. The entries were not shown to have been made at the time of the transactions, or in the regular course of business. The account as kept on the books of the Louisville Banking Company had been submitted at the end of every month to the Pineville bank, and had been acknowledged by it to be correct. As we have said, it must be treated as an account stated. The commissioner should have taken the balance as shown by this account as the basis. To this balance should be added the amount of the Barry notes charged to the Pineville bank on the account, with six per cent. interest from the time it was charged. We do not see from the record any other mistake in the account. If any appears, it may be corrected according to the principles laid down above. The $1,200 note made by the Pineville Banking Company should be charged to the account at its maturity; also the Wyman & Cairns note, and the checks paid; and interest should be allowed on the balance, as it may appear, up to the time the proceeds of the Bell county bonds were received.

This is not a bill of interpleader. The costs should be

paid as in other equitable actions. No part of the attorney's fees of appellant should be charged to appellee.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

Petition for rehearing by appellant overruled.